UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

SHAUN REEN,

                          Plaintiff,                    **MEMORANDUM & ORDER**
                                                        16-CV-3347 (MKB)

            v.

THE CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, TRAFFIC AGENT
MOHAMMAD ISLAM, NYPD POLICE OFFICER
WILLIAM GRIESHABER, SERGEANT KEITH
BURKITT, and CAPTAIN DANIEL MAHONEY,

                          Defendants.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Shaun Reen commenced the above-captioned action on June 21, 2016, and filed

an Amended Complaint on April 13, 2017, against Defendants the City of New York (the

"City") and the New York Police Department ("NYPD"), and Individual Defendants Traffic

Agent Mohammad Islam ("T.A. Islam"), Police Officer William Grieshaber, Sergeant Keith

Burkitt, and Captain Daniel Mahoney.  (Compl., Docket Entry No. 1; Am. Compl., Docket Entry

No. 19.)  Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for false arrest, retaliation, abuse

of process, malicious prosecution, and denial of his right to a fair trial.  (Am. Compl. ¶¶ 33–34.)

Plaintiff also asserts a claim against the City for municipal liability.  (*Id*. ¶¶ 35–39.)  Plaintiff's

claims arise from his arrest on July 1, 2015 for obstructing governmental administration.  (*Id*. ¶¶

15–31.)

      Currently before the Court is Defendants' motion for summary judgment pursuant to

Rule 56 of the Federal Rules of Civil Procedure.  (Defs. Mot. for Summ. J. ("Defs. Mot."),

Docket Entry No. 44; Defs. Mem. in Supp. of Defs. Mot. ("Defs. Mem."), Docket Entry No. 45.)

For the reasons discussed below, the Court grants Defendants' motion in part and denies it in part.

## I. Background

The following facts are undisputed unless otherwise noted.

On July 1, 2015, Plaintiff had an encounter with Individual Defendants T.A. Islam, Officer Grieshaber, Sergeant Burkitt, and Captain Mahoney, resulting in his arrest and prosecution. On that date, T.A. Islam was on duty, patrolling an area within the 100th Precinct in a NYPD-issued traffic vehicle. (Pl. Resp. to Defs. Local Rule 56.1 ("Pl. Resp. to Defs. 56.1") ¶¶ 1–3, Docket Entry No. 49.) T.A. Islam was on foot patrolling the area near the intersection of Beach 129th Street and Cronston Avenue in Queens, New York at approximately 3:15 PM when Plaintiff noticed T.A. Islam's traffic vehicle parked in front of a fire hydrant. (*Id*. ¶¶ 6–8.) Plaintiff observed T.A. Islam "coming down the block checking the dashboards of cars," wearing his uniform with his ticket-book out. (*Id*. ¶¶ 10–12.) Plaintiff approached T.A. Islam and asked him why he had parked in front of a fire hydrant. (*Id*. ¶ 16.) T.A. Islam "mumbled" a response to which Plaintiff said "I don't understand." (*Id*. ¶ 17.)

Defendants contend that Plaintiff then grabbed T.A. Islam's wrist or arm and told him that he could not leave. (*Id*. ¶ 23.) Plaintiff denies touching, grabbing, or making any physical contact with T.A. Islam. (*Id*.) T.A. Islam yelled "racist" and "assault" before walking to and entering his vehicle. (*Id*. ¶¶ 18, 33.) Plaintiff demanded that T.A. Islam call a supervisor to the scene because T.A. Islam "refused to answer why he was parked on the hydrant" and Plaintiff believed that he would be charged with a crime due to T.A. Islam's accusation of assault. (*Id*. ¶¶ 25, 26.) Plaintiff continued to demand a supervisor, tapping on T.A. Islam's car door window.

(*Id.* ¶ 34.) Less than one minute later, James Savarese, Plaintiff's acquaintance, "coincidentally" appeared and advised Plaintiff not "to waste his time. They always park on the hydrant." (*Id.* ¶¶ 32, 36.) A lieutenant with the New York City Fire Department, Ryan McNamara, also coincidentally appeared shortly after T.A. Islam entered his vehicle. (*Id.* ¶¶ 35–36.) Plaintiff asked McNamara to call 911 because "it's getting out of control" and the "traffic agent had accused [him] of a major crime and is now ignoring [him] and ignoring the fire lieutenant in uniform." (*Id.* ¶ 41.)

Savarese went to the rear of T.A. Islam's vehicle and took pictures. (*Id.* ¶ 43.) Plaintiff stood in front of T.A. Islam's vehicle. (*Id.* ¶ 50; Photographs, annexed to Decl. of Jorge Marquez ("Marquez Decl.") as Exs. A and B, Docket Entry Nos. 47-1–47-2.) T.A. Islam put on the lights and sirens and put the car in reverse, moving it a few inches before hitting the brakes. (*Id.* ¶¶ 44–45.) T.A. Islam exited his vehicle and took photographs of the scene showing Plaintiff leaning on his bicycle at the front of the vehicle and Savarese standing at the rear. (*Id.* ¶¶ 50, 53.) The photographs also show McNamara standing on the driver's side of the vehicle on the telephone. (*Id.* ¶ 54.) Plaintiff denies that he impeded T.A. Islam from leaving "in any case whatsoever" and specifically denies placing himself in a manner that blocked T.A. Islam from leaving in his traffic vehicle. (*Id.* ¶¶ 46, 48.)

T.A. Islam got back in his car and called his supervisor to report that he was being obstructed from performing his job. (*Id.* ¶¶ 57, 59.) After calling 911 at Plaintiff's request, McNamara left the scene. (*Id.* ¶ 60.) Officer William Grieshaber arrived on the scene with Officer Michael Fransson. (*Id.* ¶ 67.) Officer Grieshaber observed Plaintiff in front of the vehicle, Savarese standing in the rear of the vehicle, and T.A. Islam inside the vehicle. (*Id.*) The officers separated each of the parties and "[e]verybody got a chance to tell their side of the

story." (*Id*. ¶¶ 70–74.) T.A. Islam informed the officers that Plaintiff and Savarese "obstructed him."[1] (*Id*. ¶¶ 76–77.) T.A. Islam also informed the police that Plaintiff had complained about him parking by the fire hydrant, (*id*. ¶ 79), and that Savarese had stood behind T.A. Islam's traffic vehicle, (*id*. ¶ 80). Plaintiff asserts that T.A. Islam lied to the police by telling them that Plaintiff had scratched his vehicle and that this was immediately refuted by a witness on the scene.[2] (Defs. Reply to Pl. Counter-Statement of Material Facts Pursuant to 56.1 ("Defs. Reply to Pl. 56.1") ¶ 124, Docket Entry No. 53.)

The police officers told Plaintiff that "they weren't going to [arrest him] until they were directed [to] by their superior officer." (Pl. Resp. to Defs. 56.1 ¶ 88.) Officers Grieshaber and Fransson's superior officer, Sergeant Keith Burkitt, appeared on the scene and conferred with the officers. (*Id*. ¶ 90.) T.A. Islam informed Sergeant Burkitt that Plaintiff grabbed him, refused to let him leave, and that Plaintiff and Savarese blocked his vehicle for approximately fifteen minutes. (*Id*. ¶¶ 93–96.) T.A. Islam also informed Burkitt that Plaintiff "was in front of the vehicle with his bicycle blocking him from pulling out" and Savarese "was in the rear of his vehicle." (*Id*. ¶ 97.)

Plaintiff and Savarese were driven in a police vehicle to the 100th Precinct but were not

---

[1] Although Plaintiff admits that he could not hear what T.A. Islam said to the officers, Plaintiff relies on Savarese's deposition testimony to dispute that T.A. Islam informed the officers that he had been obstructed. (Pl. Resp. to Defs. 56.1 ¶ 77.) However, Savarese admitted at his deposition that he could not hear what T.A. Islam said to the officers after they were separated. (Dep. of James Savarese ("Savarese Dep.") 68:12–13, annexed to Decl. of Jorge Marquez ("Marquez Decl.") as Ex. F, Docket Entry No. 47-6.)

[2] The witness is Eileen Anderson, Plaintiff's sister. (*See* Dep. of Eileen Anderson, annexed to Decl. of Gillian Cassell-Stiga as Ex. 13, Docket Entry No. 50-13.)

handcuffed.[3]  (*Id.* ¶¶ 100–02.)  At the precinct, T.A. Islam explained to Captain Daniel Mahoney that Plaintiff and Savarese obstructed him by standing in front of and behind his car and refused to let him leave even though he had asked them to move.  (*Id.* ¶¶ 104–05, 109.)  T.A. Islam also informed Captain Mahoney that Plaintiff had grabbed him.  (*Id.* ¶ 106.)

Captain Mahoney met with Plaintiff and Savarese and became angry when Savarese informed him that Savarese "went behind the car and took a couple of pictures."  (Defs. Reply to Pl. 56.1 ¶ 145.)  Plaintiff informed Captain Mahoney that he "only wanted [T.A. Islam's] supervisor to appear" and to "advise and admonish the agent for improperly parking his car," because "the traffic agent wasn't being supervised properly."  (*Id.* ¶¶ 110–11.)  Plaintiff also told Mahoney that "once it escalated to assault," he "wanted an official report to be made."  (*Id.* ¶ 112.)  After Plaintiff stated that T.A. Islam was not being properly supervised, Captain Mahoney appeared visibly displeased and "glared" at Plaintiff.  (Defs. Resp. to Pl. 56.1 ¶ 144.)  Captain Mahoney asked Plaintiff why he was trying to "take pay away from the officers."  (*Id.* ¶ 143.)

After Captain Mahoney spoke with Plaintiff and Savarese, Officer Grieshaber arrested them for obstructing governmental administration.  (*Id.* ¶¶ 98, 146.)  Plaintiff was held overnight.  (*Id.* ¶ 147.)  Officer Fransson recalls that Plaintiff's arrest was based entirely on information provided by T.A. Islam.  (*Id.* ¶ 99.)

### a.  Prosecution of Plaintiff

All of the paperwork associated with Plaintiff's arrest was prepared by and forwarded to the Queens County District Attorney's Office (the "DA's Office") by Officer Grieshaber.

---

[3]  Plaintiff contends that once the responding officers arrived, he was not permitted to leave and his detention "constituted a Fourth Amendment seizure" though he was not formally arrested until after he spoke to Mahoney at the 100th Precinct.  (Pl. Resp. to Defs. 56.1 ¶ 87; Defs. Resp. to Pl. 56.1 ¶ 141.)

(Compl. Report, annexed to Decl. of Gillian Cassell-Stiga ("Cassell-Stiga Decl.") as Ex. 2;

Arrest Report, annexed to Cassell-Stiga Decl. as Ex. 3; Criminal Compl., annexed to Cassell-

Stiga Decl. as Ex. 4, Docket Entry No. 50-4.) T.A. Islam submitted a sworn statement to the

DA's Office in support of the criminal charges brought against Plaintiff. (Pl. Resp. to Defs. 56.1

¶ 148; Criminal Compl.) T.A. Islam also met with the DA's Office. (Pl. Resp. to Defs. 56.1 ¶

114.) The DA's Office prepared a criminal complaint signed by Officer Grieshaber based on the

information from T.A. Islam. (*Id*. ¶¶ 114–16.) The criminal complaint states, in part, that T.A.

Islam informed Officer Grieshaber that Plaintiff and Savarese stood in the front and rear of his

vehicle respectively and refused to move when asked. (Criminal Compl. 1–2.)

Plaintiff hired a defense attorney and was required to make three court appearances

pursuant to New York Criminal Procedure Law § 510.40. (Defs. Resp. to Pl. 56.1 ¶¶ 149–51; Pl.

Opp'n 23.) All of the charges were dismissed by motion of the DA's Office on April 27, 2016.

(Defs. Resp. to Pl. 56.1 ¶ 151.)

## II.  Discussion

### a.  Standard of review

Summary judgment is proper only when, construing the evidence in the light most

favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wandering Dago, Inc. v.

Destito*, 879 F.3d 20, 30 (2d Cir. 2018); *see also Cortes v. MTA NYC Transit*, 802 F.3d 226, 230

(2d Cir. 2015). The role of the court "is not to resolve disputed questions of fact but only to

determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of

Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d

537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50

(1986)).  A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment.  *Id.*  The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b.  False arrest claim

Defendants argue that Plaintiff's false arrest claim fails because the police officers had probable cause to arrest Plaintiff for obstructing governmental administration pursuant to New York Penal Law § 195.05.  (Defs. Mem. 4.)

Plaintiff contends that probable cause did not exist to arrest him and Defendants "simply arrested [him] in retaliation for his verbal complaint."  (Pl. Opp'n 7.)

In addressing a section 1983 claim for false arrest, courts look to "the law of the state in which the arrest occurred" to determine if the officers had probable cause to arrest the plaintiff for a violation of state law.  *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006); *see also Ackerson v. City of White Plains*, 702 F.3d 15, 19–21 (2d Cir. 2012) (analyzing whether the plaintiff's actions gave a police officer probable cause to arrest the plaintiff for violating state law).  To establish a section 1983 claim for false arrest under New York law, the plaintiff must adduce evidence that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.  *Berg v. Kelly*, 897 F.3d 99, 106 (2d Cir. 2018) (citing *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003)).  "A [section] 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Gonzalez v. City of*

*Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013).

The Fourth Amendment protects individuals from unreasonable searches and seizures by law enforcement officials. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). A law enforcement official violates the Fourth Amendment if he or she arrests someone without probable cause. *Id.* Conversely, "probable cause is an absolute defense to a false arrest claim." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (quoting *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 139 (2d Cir. 2010)). "A police officer has probable cause for an arrest when he has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime . . . .'" *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852). In addition, police officers have probable cause to arrest when they personally observe a person commit a crime in their presence. *See Ackerson*, 702 F.3d at 20. The reviewing court "must consider [only] those facts available to the officer at the time of the arrest and immediately before it." *Stansbury*, 721 F.3d at 89 (alteration in original) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)). Probable cause need not be "predicated upon the offense invoked by the arresting officer, or even upon an offense 'closely related' to the offense invoked by the arresting officer." *Jaegly*, 439 F.3d at 153 (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). The question is whether the facts known to the arresting officer, at the time of the arrest, objectively support a finding of probable cause to support the arrest. *Gonzalez*, 728 F.3d at 155.

### i.  Probable cause for obstructing governmental administration

The parties do not dispute that Plaintiff was arrested, was aware of his confinement, and did not consent to it. (Pl. Opp'n 9.) However, Defendants argue that the confinement was

privileged because they had probable cause to arrest Plaintiff pursuant to New York Penal Law § 195.05. (Defs. Mem. 4–17.) Defendants contend that Officer Grieshaber, Sergeant Burkitt, and Captain Mahoney had probable cause to arrest Plaintiff upon learning that Plaintiff demanded T.A. Islam call a supervisor and stood in front of his vehicle, blocking him from leaving the scene. (*Id.*)

Plaintiff argues that no probable cause existed because T.A. Islam was not performing a specific governmental function, Plaintiff did not physically obstruct him from performing his duties, and T.A. Islam was not a credible witness. (Pl. Opp'n 11–16.)

New York Penal Law § 195.05 states in relevant part:

> "[a] person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of an independently unlawful act . . ."

N.Y. Penal Law § 195.05.

"Under New York law, obstructing governmental administration has four elements: '(1) prevention or attempt to prevent (2) a public servant from performing (3) an official function (4) by means of intimidation, force or interference.'" *Cameron v. City of New York,* 598 F.3d 50, 68 (2d Cir. 2010) (quoting *Lennon v. Miller*, 66 F.3d 416, 424 (2d Cir. 1995)); *Basinski v. City of New York*, 706 F. App'x 693, 697 (2d Cir. 2017).

To be liable for obstructing governmental administration, a defendant must also *intend* to "prevent the public servant from engaging in a specific official function." *Dowling v. City of New York*, No. 11-CV-4954, 2013 WL 5502867, at *4 (E.D.N.Y. Sept. 30, 2013). However, courts must "afford[ ] [officers] great latitude in ascertaining intent," for probable cause determinations, because officers face "great 'practical restraints . . . in the field.'" *Fana v. City*

*of New York*, No. 15-CV-8114, 2018 WL 1581680, at *9 (S.D.N.Y. Mar. 27, 2018) (quoting *Gersbacher v. City of New York*, No. 14-CV-7600, 2017 WL 4402538, at *7 (S.D.N.Y. Oct. 2, 2017)).  An officer will have arguable probable cause to arrest someone for obstructing governmental administration even without evidence of intent.  *See also Dorceant v. Aquino*, No. 15-CV-7103, 2018 WL 3869891, at *3 (E.D.N.Y. Aug. 15, 2018) (citing *McGuire v. City of New* York, 142 F. App'x 1, 3 (2d Cir. 2005); and then citing *Kass v. City of New York*, 864 F.3d 200, 210 (2d Cir. 2017); and then citing *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 403 (E.D.N.Y. 2011) (finding that arguable probable cause existed to arrest the plaintiff for obstructing governmental administration even where the plaintiff had benevolent motivations for her interference)).

Under the fourth element, the accused must "act by one of three methods: (1) 'intimidation,' (2) 'physical force or interference,' or (3) 'any independently unlawful act.'" *Uzoukwu v. City of New York*, 805 F.3d 409, 414–15 (2d Cir. 2015) (quoting *People v. Case*, 396 N.Y.S.2d 841, 844 (1977).  "It is axiomatic that only physical interference is encompassed in the second method of obstruction." *Id.* (internal quotations omitted); *In re Davan L.*, 666 N.Y.S.2d 1015, 1016 (1997) ("[T]he interference would have to be, in part at least, physical in nature."). Thus, "purely verbal interference may not satisfy the 'physical component under Penal Law § 195.05.'"  *Id.* at *414–415 (citing *In re Davan L.*, 666 N.Y.S.2d at 1016; and then citing *Case*, 396 N.Y.S.2d at 844, ("[T]he statute has been uniformly interpreted to the effect that mere words alone do not constitute 'physical force or interference' such as to support the charge of obstructing governmental administration.").  "'[I]nterference' within the meaning of Section 195.05 must be a 'physical interference.'"  *Basinski*, 706 F. App'x at 697 (quoting *Case*, 396 N.Y.S.2d at 844).

While the interference in police activity must be physical in nature, "physical interference" has been broadly construed and can be "minimal." *Basinski*, 706 F. App'x at 698; *see also People v. Dumay*, 992 N.Y.S.2d. 672, 676 (2014). "[I]nappropriate and disruptive conduct at the scene of the performance of an official function is sufficient." *Kass*, 864 F.3d at 209 (internal citations omitted) (quoting *People v. Romeo*, 779 N.Y.S.2d 860, 861–62 (App. Div. 2004)); *see also Fana*, 2018 WL 1581680, at *8.

### 1. Plaintiff's intent to obstruct T.A. Islam

A reasonable officer who observed Plaintiff and Savarese standing in the front and back of T.A. Islam's vehicle respectively could believe that the individual intended to prevent T.A. Islam from engaging in his specific official function. *See Dowling*, 2013 WL 5502867, at *4. Plaintiff's words and actions demonstrated Plaintiff's intent that T.A. Islam remain on the scene, instead of continuing to perform his official traffic agent duties. Plaintiff told Officer Grieshaber and Captain Mahoney that he wanted T.A. Islam to remain on the scene until a supervisor appeared to observe T.A. Islam's vehicle blocking the fire hydrant.[4] (Pl. Resp. Defs. 56.1 ¶¶ 75, 111.)

### 2. T.A. Islam was a public servant prevented from performing an official function

The arresting officers had probable cause to believe that T.A. Islam was prevented from performing his official duties. At the time of his encounter with Plaintiff, T.A. Islam was in uniform, on duty, and patrolling the confines of the 100th Precinct for parking violations. (Pl.

---

[4] Plaintiff argues that he also remained on the scene because he was concerned that T.A. Islam would report him for assault. (Pl. Opp'n 5.) Even if true, this fact would not prevent an officer from concluding or determining that Plaintiff exhibited the requisite intent to prevent T.A. Islam from leaving. *See Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 403 (E.D.N.Y. 2011) (finding that arguable probable cause existed to arrest the plaintiff for obstructing governmental administration even where the plaintiff had benevolent motivations for her interference).

Resp. to Defs. 56.1 ¶¶ 1–3, 6.)  Plaintiff observed T.A. Islam in uniform, with his ticket-book out, "checking cars for illegal parking."  (*Id*. ¶¶ 11, 12, 14.)

Plaintiff nevertheless argues that T.A. Islam was not engaged in a specific official function but instead "simply returning to his vehicle having after [sic] concluding his rounds on the block" when he encountered Plaintiff.  (Pl. Opp'n 2.)  Plaintiff provides no support for his claim that T.A. Islam had "conclud[ed] his rounds" or had otherwise finished performing his official functions as a traffic agent.  Instead, Plaintiff relies on *Gogol v. City of New York*, No. 15-CV-5703, 2017 WL 3449352, at *6 (S.D.N.Y. Aug. 10, 2017), in which the district court held that a police officer was not engaged in a specific official function at the time of his interaction with the plaintiff but was merely "on duty."  However, unlike in *Gogol* where the officer was simply standing near an area recently secured by the police, the parties agree that T.A. Islam was not only "on duty" but also actively *performing* his duties as a traffic agent, which included patrolling the area for traffic violations.  *See People v. Ford*, 36 N.Y.S.3d 374, 378 (N.Y. Crim. Ct. 2016) (finding "maintaining order" would suffice as a police officer's official function while "performing a tour" would not).

Even if T.A. Islam was not issuing a ticket at the exact moment Plaintiff approached him, there is no reason to believe he would not have continued to investigate violations had he not been prevented from doing so by Plaintiff's subsequent acts.  Moreover, Plaintiff does not provide any evidence that the officers had any reason to believe T.A. Islam was not performing his official functions at the time of his interaction with Plaintiff.

### 3.  Plaintiff's use of intimidation, force, or interference

The arresting officers also had probable cause to believe Plaintiff had used intimidation or force to prevent T.A. Islam from performing his official duties.  When Officers Grieshaber and Fransson appeared on the scene, they observed Plaintiff in front of T.A. Islam's vehicle,

Savarese in the rear of the vehicle, and T.A. Islam inside the vehicle. (Pl. Resp. to Defs. 56.1 ¶ 68.) At different points, T.A. Islam informed Officer Grieshaber, Sergeant Burkitt, and Captain Mahoney that Plaintiff and Savarese "were not allowing him to move," (Grieshaber Dep. 76:4–8), and that Plaintiff had grabbed him, refused to let him leave, and had blocked him for approximately fifteen minutes by standing "in front of the vehicle with his bicycle blocking [T.A. Islam] from pulling out" while Savarese "was in the rear of the vehicle." (*Id.* ¶¶ 92-97, 104-109.)

Plaintiff does not appear to deny that he stood in front of T.A. Islam's car. (*Id.* ¶ 50 (admitting photograph shows "Mr. Reen standing in front of [T.A. Islam's] vehicle"); *cf.* Pl. Opp'n 15 (claiming there is "one photograph of [Plaintiff] standing next to the agent's vehicle").)[5] Beyond Officer Grieshaber's own observation of Plaintiff standing in front of T.A. Islam's vehicle, two photographs also show Plaintiff in the front of T.A. Islam's car and Savarese in the back as T.A. Islam described. (*See* Photographs.)

Plaintiff's verbal complaints and other harassing conduct provided further support for a finding of probable cause to believe Plaintiff intimidated T.A. Islam to remain on the scene. *See Uzoukwu*, 805 F.3d at 415 ("While mere words alone do not constitute physical force or interference, words coupled with [physical] actions are sufficient.") (quoting *People v. Chang*, 901 N.Y.S.2d 909 (N.Y. Crim. Ct. 2009)); *see also Kass*, 864 F.3d at 209 (internal citations

---

[5] To the extent that Plaintiff argues he never stood in front of Plaintiff's car, the Court finds that account cannot be credited in view of the photographs that T.A. Islam took at the scene. *See Scott v. Harris,* 550 U.S. 372, 398–379 (2007) (refusing to adopt the plaintiff's version of facts when it was "clearly contradict[ed]" by the videotape of the events); *Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007) ("Incontrovertible evidence relied on by the moving party, such as a relevant videotape whose accuracy is unchallenged, should be credited by the court . . . if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party.").

omitted); *Rasmussen*, 766 F. Supp. 2d at 403 ("[M]erely approaching the police, or speaking during the course of a police action, or disregarding police instructions, will support a conviction for [obstructing governmental administration]." (citing *Husbands ex rel. Forde v. City of New York*, No. 5-CV-9252, 2007 WL 2454106 (S.D.N.Y. Aug. 16, 2007))). Plaintiff repeatedly complained about T.A. Islam parking next to the fire hydrant and insisted that T.A. Islam call a supervisor to the scene, even after T.A. Islam got into his vehicle and ignored him. (Pl. Resp. to Defs. 56.1 ¶¶ 9, 16, 21, 25.) In addition, Plaintiff recruited Savarese and McNamara to assist him in getting T.A. Islam to call his supervisor to the scene. (*Id.* ¶¶ 31, 39, 40; Dep. of James Savarese ("Savarese Dep.") 48:11–49:1, annexed to Marquez Decl. as Ex. F, Docket Entry No. 47-6.) Plaintiff's conduct as a whole was "inappropriate and disruptive." *See Kass*, 864 F.3d at 209. These acts constitute obstruction, even if the physical interference was "minimal." *Basinski*, 706 F. App'x at 698.

In sum, the arresting officers had probable cause based on their observations on the scene and T.A. Islam's account of the incident to arrest Plaintiff for preventing T.A. Islam from performing his official functions by means of intimidation, force or interference.[6] *See*

_____

[6] Plaintiff argues that any probable cause was vitiated because T.A. Islam "was observably not fluent in English." (Pl. Opp'n 17.) There is no indication in the record that the police had difficulty understanding T.A. Islam's account or were otherwise unreasonable in relying on him due to language constraints. Plaintiff also argues that Officer Grieshaber did not have probable cause because T.A. Islam's allegation that Plaintiff had scratched his vehicle was contradicted by Plaintiff's sister who was a witness to part of the encounter. (*Id.* at 17; Anderson Dep. 46, 48–49.) Defendants did not rely on any accusation with respect to scratches on T.A. Islam's vehicle in determining probable cause for obstructing governmental administration. (Defs. Mem. 5.) Neither the arrest report, (Arrest Report, annexed to Cassell-Stiga Decl. as Ex. 3, Docket Entry No. 50-3), nor the criminal complaint, (Criminal Compl.), refer to any damage to the vehicle. Moreover, Anderson's alleged contradiction alone did not render T.A. Islam an incredible witness such that Officer Grieshaber and Sergeant Burkitt could not reasonably rely on his account. *See Fabrikant v. French*, 691 F.3d 193, 216 (2d Cir. 2012) ("[A] law enforcement official has probable cause to arrest if he received his information from some

*Cameron*, 598 F.3d at 68; *see also Panetta*, 460 F.3d at 395 ("[T]he determination of probable cause does not turn on whether [the fellow agent's] observations were accurate, but on whether [the arresting agent] was reasonable in relying on those observations.").

Accordingly, the Court grants Defendants' motion as to Plaintiff's false arrest claims.[7]

### c. First Amendment retaliation claim

Plaintiff asserts that his arrest was motivated by T.A. Islam's retaliation after Plaintiff exercised his first amendment right to criticize T.A. Islam. (Pl. Opp'n 20–22.)

Defendants argue that Plaintiff's first amendment retaliation claims fail because the officers had probable cause to arrest Plaintiff. (Defs. Mem. 19–20.)

To prevail on a First Amendment retaliation claim, a plaintiff must show that: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused an injury. *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (citation omitted); *see also Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).

In the context of a First Amendment retaliation claim based on speech directed towards an officer leading to a seizure, a plaintiff cannot establish that "the [officer's] actions caused an injury" if the seizure was based on probable cause. *See Goldoner v. City of New London*, 443 F. App'x 622, 624 (2d Cir. 2011) (holding that "probable cause is as a complete defense to a First

---

person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." (citations omitted)).

[7] Because T.A. Islam neither ordered nor executed Plaintiff's arrest, the false arrest claim asserted as to him is also dismissed. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).

Amendment claim for retaliatory arrest" (citing *Mozzochi v. Borden*, 959 F.2d 1174, 1179 (2d Cir. 1992))); *see also Abeyta v. City of New York*, 588 F. App'x 24, 25 (2d Cir. 2014) ("Because . . . defendants had probable cause to detain plaintiff, . . . plaintiff's challenge to the [d]istrict [c]ourt's dismissal of his First Amendment retaliation claim is without merit." (citation omitted)). If, however, there was no probable cause, the seizure satisfies the injury element of a First Amendment retaliation claim. *See Zalaski v. City of Hartford*, 723 F.3d 382, 395 (2d Cir. 2013) (affirming a district court's decision denying summary judgment as to the plaintiff's First Amendment retaliation claims because of disputed issues of fact regarding probable cause to arrest); *Gogol*, 2017 WL 3449352, at *9 ("Since a reasonable factfinder . . . could find that [the plaintiff] was arrested and charged with . . . disorderly conduct in retaliation for the exercise of her First Amendment rights, she has demonstrated injury sufficient to survive summary judgment.").

Because the Court finds that Defendants had probable cause to arrest Plaintiff for obstructing governmental administration, Defendants have a complete defense to Plaintiff's First Amendment retaliation claims.

Accordingly, the Court grants Defendants' motion as to Plaintiff's First Amendment retaliation claim. *See Goldoner*, 443 F. App'x at 624.

### d. Malicious prosecution

Plaintiff asserts a malicious prosecution claim based on the issuance of the criminal complaint against him for obstructing governmental administration.[8] (Am. Compl. ¶ 33.)

---

[8] Plaintiff also appears to assert a claim for abuse of criminal process in the Amended Complaint. (Am. Compl. ¶ 33, Docket Entry No. 19.) Defendants move for summary judgment as to this claim, (Defs. Mem. 23–24), and Plaintiff does not address the claim in his opposition to the motion, (*see* Pl. Opp'n). Because Plaintiff has not provided any evidence that any

Defendants argue that the Court should dismiss Plaintiff's malicious prosecution claim because there was probable cause supporting Plaintiff's prosecution for obstructing governmental administration and Plaintiff cannot demonstrate malice. (Defs. Mem. 17–18.)

"[T]o prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) (citations and internal quotation marks omitted). In a claim for malicious prosecution under section 1983, the plaintiff must also show "that there was . . . a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000); *see also Coleman v. City of New York*, 688 F. App'x 56, 58 n.1 (2d Cir. 2017) ("The tort of malicious prosecution relates to deprivations of liberty pursuant to legal process — meaning either post-arraignment or as a result of [an] arrest pursuant to warrant." (citing *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116–17 (2d Cir. 1995))). Under New York law, the elements of a malicious prosecution claim are "(1) the initiation or continuation of a criminal proceeding against [the] plaintiff; (2) termination of the proceeding in [the] plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for [the] defendant's actions." *Morris v. Silvestre*, 604 F. App'x 22, 24 (2d Cir. 2015) (quoting *Manganiello*, 612 F.3d at 161); *Torres v. Jones*, 26 N.Y.3d 742, 760 (2016).

Because the lack of probable cause is an element of a malicious prosecution claim, "the

Defendants had an improper purpose in initiating legal process against Plaintiff, the Court grants the motion as to Plaintiff's abuse of process claim. *See Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003) ("In order to state a claim for abuse of process, a plaintiff must establish that the defendants had an improper *purpose* in instigating the action.").

existence of probable cause is a complete defense to a claim of malicious prosecution." *Keith v. City of New York*, 641 F. App'x 63, 67 (March 7, 2016) (first quoting *Stansbury*, 721 F.3d at 90; and then citing *Torres*, 26 N.Y.3d at 761); *Morris*, 604 F. App'x at 25 (A court must separately analyze "the charges claimed to have been maliciously prosecuted" to determine whether there was probable cause for the prosecution of each charge. (quoting *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991))); *id.* (holding that it was error for the district court to not discuss whether there was probable cause as to more serious crimes involving different elements). The existence of probable cause in a malicious prosecution suit is determined at the time the prosecution is commenced, *Rothstein v. Carriere*, 373 F.3d 275, 292 (2d Cir. 2004), and is marginally higher than the standard in false arrest cases in that it requires "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff [is] guilty," *Stansbury*, 721 F.3d at 95 (citation omitted).

There was probable cause to prosecute Plaintiff for obstructing governmental administration for substantially the same reasons discussed above. Even though the standard for probable cause in the context of a malicious prosecution claim is "slightly higher" than the standard for a false arrest claim, a victim's identification of the alleged perpetrator and description of the alleged conduct is generally sufficient to support probable cause and defeat a malicious prosecution claim in the absence of any facts dissipating probable cause after an arrest. *See Keith*, 641 F. App'x at 67 ("Although the probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases, information from an identified citizen accusing another individual of the commission of a specific crime is [generally still] sufficient to provide the police with probable cause." (citations and internal quotation marks omitted) (collecting cases)). Plaintiff does not argue that any facts became known after

Plaintiff's arrest which dissipated probable cause.[9] Accordingly, the Court grants Defendants' motion as to Plaintiff's malicious prosecution claims.

### e. Denial of the right to a fair trial

Plaintiff asserts that Defendants violated his right to a fair trial because T.A. Islam and Officer Grieshaber submitted fabricated evidence to the D.A.'s Office. (Pl. Opp'n 26–29.)

Defendants argue that they are not liable for a violation of Plaintiff's right to a fair trial because neither T.A. Islam nor Officer Grieshaber forwarded any false information to the prosecutor, and, in any event, T.A. Islam cannot be liable because he acted only as a witness. (Defs. Reply 11.)

To establish a fair trial claim based on fabrication of evidence, a plaintiff must show that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Ganek v. Leibowitz*, 874 F.3d 73, 90 (2d Cir. 2017) (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016)).

To satisfy the third element, the fabricated evidence need not actually reach a jury. The Second Circuit only requires "a showing . . . that the [false] information would likely influence the jury if it arrived at a jury." *Cook v. City of New York*, 243 F. Supp. 3d 332, 351 (E.D.N.Y. 2017) (quoting *Garnett*, 2015 WL 1539044, at *8). Because materiality (element three) and causation (element five) are two distinct elements "the fact that allegedly fabricated evidence would be inadmissible at trial by itself is not a bar to the claim." *Id* (quoting *Soomro v. City of New York*, 174 F. Supp. 3d 806, 816 (S.D.N.Y. 2016)).

---

[9] Plaintiff argues the Court should infer malice from a lack of probable cause. (Pl. Opp'n 22–23.) Because the Court finds the officers had probable cause, Plaintiff cannot demonstrate malice.

Unlike a false arrest or malicious prosecution claim, "probable cause is not a defense to a claim for a denial of the right to a fair trial" based on the fabrication of evidence. *Garnett*, 838 F.3d at 277 (alteration omitted) (citing *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012)). Qualified immunity is also unavailable on "a claim for denial of the right of a fair trial where the claim is premised on proof that a defendant knowingly fabricated evidence and where a reasonable jury could so find." *Morse v. Fusto*, 804 F.3d 538, 550 (2d Cir. 2015). However, witnesses who provide information to prosecutors in judicial proceedings have absolute immunity for the testimony they provide. *See Jovanovic*, 486 F. App'x at 152

### i. Claim against T.A. Islam

Plaintiff cannot bring a fair trial claim against T.A. Islam because he was not acting as an investigating official when he provided information to the prosecution. T.A. Islam did not sign the criminal complaint and was not acting in an investigatory capacity when he provided his statement to the D.A.'s Office. *See Rolon v. Henneman*, 517 F.3d 140, 144 (2d Cir. 2008) (finding that the "Second Circuit has only recognized a constitutional right 'not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigation capacity'" (quoting *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000)). Instead, T.A. Islam provided his statement to the D.A.'s Office as a complaining witness. (Pl. Resp. to Defs. 56.1 ¶ 115.) As a witness, T.A. Islam has absolute immunity for his testimony in judicial proceedings. *See Rehberg v. Paulk,* 566 U.S. 356, 366 (2012); *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983); *Jovanovic*, 486 F. App'x at 152 (dismissing a fair trial claim where "the only avenue by which the [allegedly false evidence] could reach the jury was through [the officer's] testimony, for which he enjoys absolute immunity"). This immunity extends to T.A. Islam's discussions with the prosecutor. *Rehberg*, 566 U.S. at 366.

Furthermore, there is no evidence that T.A. Islam knowingly forwarded material false information to the prosecution. Plaintiff identifies a contradiction between T.A. Islam's deposition testimony and the information he provided to prosecutors relating to exactly when Plaintiff allegedly grabbed him. (Pl. Opp'n 27 (citing Dep. of Mohammad Islam ("Islam Dep.") 47:19–52:14, annexed to Marquez Decl. as Ex. C.) Plaintiff does not, and cannot, credibly argue that, under the circumstances of this case, the timing of *when* Plaintiff grabbed T.A. Islam's arm is information likely to influence the jury's verdict. *See Ganek*, 874 F.3d at 90. While Plaintiff may deny T.A. Islam's allegations, Plaintiff cannot claim that this factual disagreement or a minor discrepancy supports an inference that T.A. Islam knowingly fabricated evidence against him. As a result, the Court dismisses the fabrication of evidence claim against T.A. Islam.

### ii. Claim against Officer Grieshaber

In contrast to T.A. Islam, the parties agree that Officer Grieshaber — who signed the criminal complaint and filed the arrest report — is an investigating official. (Defs. Mem. 19.) Plaintiff asserts that Officer Grieshaber "knowingly forwarded false information to prosecutors and withheld material exculpatory information." (Pl. Opp'n 29–30.)

Plaintiff has produced some evidence that Officer Grieshaber provided false information to the prosecution likely to influence a jury. In the criminal complaint, Officer Grieshaber states that he was "further informed by traffic agent Mohammad Islam that when he asked the Defendants to please move, they refuse to move." (Crim. Compl. 1–2.) However, when asked about this statement during his deposition, Officer Grieshaber stated that he did not remember T.A. Islam informing him that he had asked Plaintiff to move or that Plaintiff had refused to move. (Dep. of William Grieshaber 76:18–77:7, annexed to Marquez Decl. as Ex. H.) In addition, Plaintiff's refusal of T.A. Islam's requests that he move would be likely to influence a

jury's decision in determining whether Plaintiff obstructed governmental administration.

Finally, Plaintiff suffered a deprivation of liberty as a result of Officer Grieshaber's statement in the form of repeated court appearances and restrictions pursuant to New York Criminal Procedure Law § 510.40. *See Gogol*, 2017 WL 3449352, at *11 (finding any post-arraignment deprivation of liberty, including court appearances, sufficient to satisfy the deprivation of liberty prong) (citing *Singer*, 63 F.3d at 117; and then citing *Swartz*, 704 F.3d at 112.

Construing the evidence in the light most favorable to the non-moving party and drawing all factual inferences in the non-moving party's favor, *Anderson*, 477 U.S. at 252, the Court finds that a reasonable jury could find that Officer Grieshaber knowingly provided material, false information to the D.A.'s Office, resulting in a deprivation of his liberty.

Because a genuine issue of material fact exists as to whether Officer Grieshaber fabricated evidence against Plaintiff, the Court denies Defendants' motion as to Plaintiff's denial of the right to a fair trial claim against Officer Grieshaber.

### f. Municipal liability

Defendants argue that the Court should dismiss Plaintiff's *Monell* claim because he fails to show that the moving force behind his arrest and prosecution was some purported policy or custom of the City of New York. (Defs. Mem. 25.) Plaintiff does not respond to Defendants' motion as to his municipal liability claim. (*See* Pl. Opp'n.)

In order to assert a section 1983 claim against municipal defendants such as the City of New York, a plaintiff must demonstrate that "(1) an official [municipal] policy or custom that (2) cause[d] the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco*, 615 F.3d at 140 (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *Douglas v. City of*

*New York*, 730 F. App'x 12, 17 (2d Cir. 2018) (same). A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates. *See Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13–14 (2d Cir. 2015) (formal policy officially endorsed by the municipality); *Matusick v. Erie County Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (widespread and persistent practice); *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) (failure to train amounting to deliberate indifference); *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (policymaking official's "express" or "tacit" ratification of low-level employee's actions).

Plaintiff has not identified any official policy or custom of the City that led to any of the alleged constitutional violations nor provided any evidence in support of this claim. Accordingly, the Court grants Defendants' motion as to Plaintiff's municipal liability claim.

### g. Claims against the NYPD

Plaintiff cannot sue the NYPD because it is an agency of the City of New York. Section 396 of the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter, chap. 17 § 396. This provision "has been construed to mean that New York City departments, as distinct from the City itself, lack the capacity to be sued." *Ximines v. George Wingate High Sch.*,

516 F.3d 156, 159–60 (2d Cir. 2008) (per curiam); *see also Jenkins v. City of New York*, 478

F.3d 76, 93 n.19 (2d Cir. 2007) ("[T]he NYPD is a non-suable agency of the City."); *Morris v.*

*N.Y.C. Police Dep't*, 59 F. App'x 421, 422 (2d Cir. 2003) (affirming dismissal of claims asserted

against the NYPD due to non-suable-entity status); *Johnson v. Dobry,* 660 F. App'x 69, 72 (2d

Cir. 2016) (citing N.Y. City Charter ch. 17, § 396, which states that actions must be brought

against the City, not an agency).

The Court therefore dismisses Plaintiff's claim against the NYPD.

## III. Conclusion

For the foregoing reasons, the Court grants Defendants' motion for summary judgment

as to all of Plaintiff's claims with the exception of the denial of the right to a fair trial claim

against Officer Grieshaber.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated:  September 25, 2018
          Brooklyn, New York